IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KESHIA HUNT, INDIVIDUALLY AND ON BEHALF OF HER MINOR CHILD, MYA HUNT, <br><br> Plaintiffs, <br><br> v. <br><br> MCNEIL CONSUMER HEALTHCARE, a Division of MCNEIL-PPC, INC.; and JOHNSON & JOHNSON, <br><br> Defendants. | Case No. _____ <br><br> **COMPLAINT AND DEMAND FOR JURY** |

Plaintiff, **KESHIA HUNT**, individually and on behalf of her minor child, **MYA HUNT**, by and through their attorneys, allege upon information and belief, as follows:

# I.
# PARTIES

1. Plaintiff, **KESHIA HUNT**, individually and on behalf of her minor child, **MYA HUNT**, is a citizen and resident of McKinney, Texas.

2. Plaintiff, KESHIA HUNT, is the natural mother and legal guardian of MYA HUNT.

3. Plaintiff, KESHIA HUNT, would show that her husband, MYA HUNT'S father, passed away in a car accident seven (7) years ago.

4. Defendant, McNeil Consumer Healthcare, a Division of McNeil-PPC, Inc. (hereafter "McNeil"), is a New Jersey Corporation with its offices at 7050 Camp Hill Rd., Fort Washington, PA 19034.

5. Defendant Johnson & Johnson is a New Jersey Corporation with its offices at

1

One Johnson & Johnson Plaza, New Brunswick, NJ 08933.

6. Defendants are or were, at all materials times hereto, in the business of designing, manufacturing and marketing a drug called Motrin (hereinafter "the drug").

7. Defendants are in the business of designing, manufacturing, selling and distributing the drug to users in Louisiana and throughout the United States through various retailers, including but not limited to pharmacies.

8. Defendants intended that the drug reach the user or consumer such as Plaintiff, **MYA HUNT**, in the condition in which it was originally sold and distributed by them.

9. Defendants put this product into the stream of commerce without any alteration or modification of the drug by any distributor or retailer.

## II.
## JURISDICTION AND VENUE

10. Both Jurisdiction and venue are proper in the Eastern District of Louisiana. The Defendants conduct or have conducted business activity in Orleans Parish, Louisiana and the defendants have distributed products throughout Orleans Parish. Plaintiff purchased and consumed the Defendants' products in the Eastern District of Louisiana and was injured in said district.

11. Jurisdiction is based on complete diversity between the Plaintiff and all of the Defendants pursuant to 28 U.S.C. § 1332.

12. Venue is proper as to causes of action against all Defendants because:

   a. A substantial part of the cause of action accrued in the State of Louisiana in that Plaintiff received and consumed the Defendants' pharmaceutical products in Orleans Parish, Louisiana and sustained injury in Orleans Parish, Louisiana (28 U.S.C. §1391(2)).

    b.  Defendants' have directed their products into Orleans Parish, Louisiana.

    c.  Defendants have sold their products into Orleans Parish, Louisiana.

    d.  Orleans Parish sits in the Eastern District of Louisiana.

13.    The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

### III.
### FACTS

14.    Plaintiff brings this action for the purpose of recovering damages for the personal injuries Plaintiff has suffered as a result of ingesting Motrin.

15.    At all times material, hereto, Defendants were engaged in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, and/or advertising the drug Motrin.

16.    On or about February 4, 2010, Plaintiff, **MYA HUNT**, took Motrin.

17.    Shortly thereafter, **MYA HUNT** was admitted to the emergency room with a severe rash and was subsequently diagnosed with severe Stevens-Johnson-Syndrome (hereinafter "SJS") and/or Toxic Epidermal Necrolysis (hereinafter "TEN"), that manifested itself over large areas of **MYA HUNT'S** body.

18.    Plaintiffs had no knowledge of any unseen potential dangerous defect or condition in the drug at the time **MYA HUNT** used it, and certainly no knowledge that it could cause SJS/TEN.

19.    Plaintiff learned on her daughter's discharge from the hospital on March 18, 2010, that her Stevens-Johnson Syndrome could have been caused by her use of Motrin.

20.    Plaintiff used the drug in the manner intended and in accordance with instructions included with the drug by Defendants.

21. The drug was defectively designed by Defendants so as to render it unreasonably dangerous to Plaintiff, **MYA HUNT**, and other persons similarly situated, in that:

   a. Defendants failed to adequately test the drug before selling and distributing it;

   b. Defendants failed to adequately and completely report the clinical trials data regarding the drug;

   c. A safer alternative design would have prevented or significantly reduced the risk of Plaintiff, **MYA HUNT'S** injuries, without substantially impairing the drug's utility;

   d. A safer, alternative design was economically and technologically feasible at the time the drug left the control of Defendants by the application of existing or reasonably achievable scientific knowledge;

   e. The drug's risk to individuals like **MYA HUNT** far outweighed its benefit, particularly considering that there were other drugs on the market, which were safer and equally as effective.

22. As a direct and proximate result of the aforesaid defects, the Plaintiff, **MYA HUNT**, sustained serious and permanent injuries, suffered great pain of mind and body, was forced to seek medical attention, will be forced to seek further medical attention in the future due to the permanent nature of her injuries, was caused to spend large sums of money for said medical attention, will be forced to spend more money in the future and, further was deprived of carrying out her normal duties and affairs for a long period of time.

23. At all times material hereto, Defendant MCNEIL CONSUMER HEALTHCARE, a Division of MCNEIL-PPC, INC., was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, and/or selling, either directly or

indirectly, through third parties, as successor in interest, or other related entities Motrin in the state of Louisiana and in interstate commerce.

24. At all times material hereto, Defendant, JOHNSON & JOHNSON, was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, and/or selling, either directly or indirectly, through third parties, as successor in interest, or other related entities Motrin in the state of Louisiana and in interstate commerce.

25. At all relevant times, Defendants were acting by and through their agents, servants and/or employers, each of whom were acting within the scope and course of their employment by agency or authority on their behalf.

26. Plaintiff, **MYA HUNT**, ingested the Motrin.

27. Plaintiff's ingestion of the Motrin caused her injuries.

28. Federal law does not permit manufacturers to passively accept the inadequacy of their drug's label as they market and profit from it.

29. At a minimum, a manufacturer should alert the agency to any new safety hazards associated with its product.

30. Defendants in this case, upon information and belief, failed to investigate the accuracy of their drug label.

31. Defendants in this case, upon information and belief, failed to review the medical literature for the drug.

32. Defendants in this case, upon information and belief, failed to report adverse incidents.

## IV.
## LIABILITY

33. Defendants were at all times relevant to this suit, and is now, engaged in the business of designing, manufacturing, testing, marketing, and/or placing in the stream of commerce pharmaceuticals for sale to, and use by, members of the public, including the Motrin at issue in this lawsuit. The Motrin placed into the stream of commerce by Defendants reached Plaintiff without substantial change and was ingested as directed. The Motrin was defective and unreasonably dangerous when it entered into the stream of commerce and when used by Plaintiff.

34. Defendants are believed to be a "manufacturer" under Louisiana Revised Statute 9:2800.53(1).

35. Plaintiff hereby sets forth that the Defendants are liable to Plaintiff under the Louisiana Products Liability Act, La. R.S. 9:2800.54 et seq.:

   a. At the time Motrin left the control of the Defendants it was defective and unreasonably dangerous due to a failure to contain adequate warnings or instructions, or in the alternative, because the product breached an express warranty or failed to conform to the other expressed factual representations upon which Plaintiff and/or Plaintiff's physician's justifiably relied, or because it breached an implied warranty, all of which proximately caused the damages for which Plaintiff seeks recovery herein;

   b. Motrin was not reasonably safe as designed, taking into account the foreseeable risks involved in its use at the time the product left the possession of the Defendants, and that such risks clearly outweighed the utility of the product or its therapeutic benefits;

   c. At the time Motrin left the control of the Defendants it possessed a dangerous characteristic that may cause damage, and it was not reasonably safe due to inadequate or defective warnings or instructions that were known or reasonably scientifically knowable at the time the product left the possession of the Defendants. Specifically, although the Defendants were well aware that Motrin could potentially cause Stevens Johnson Syndrome and/or Toxic Epidermal Necrolysis, and in fact, had significantly greater prevalence and severity of these side effects in children, warnings of such adverse health

        conditions were either not included on the package insert for these products or they were not adequate to inform consumers. The Defendants failed to use reasonable care to provide an adequate warning of these dangerous characteristics to handlers and users of Motrin.

    d. The Defendants' warnings or instructions were not of a nature that a reasonably prudent drug company in the same or similar circumstances would have provided with respect to the danger. There were no warnings or instructions that communicated sufficient information on the dangers and safe use of the product taking into account the characteristics of the product, and/or the ordinary knowledge common to the consumer, such as the Plaintiff.

36. At all times pertinent and material hereto, there existed alternative feasible drugs to provide comparable benefits of Motrin to Plaintiff without the attendant risks of Stevens Johnson Syndrome and/or Toxic Epidermal Necrolysis.

37. At all times pertinent and material hereto, Defendants knew that Motrin was unreasonably dangerous and/or defective as set forth herein.

38. In the alternative, Defendant should have, at all times pertinent and material hereto, known of the unreasonably dangerous and/or defective characteristics and/or conditions of Motrin, had it reasonably employed then-existing scientific and/or technical knowledge, reasonable testing, and/or other reasonable and then-accepted methods of quality assurance and/or quality control.

39. The Motrin manufactured by Defendants is unreasonably dangerous due to an inadequate warning that, at the time the drug left Defendants' control, possessed a characteristic that might cause damage or injury to Plaintiff, and yet Defendants failed to use reasonable care to provide an adequate warning of such characteristics and/or dangers to prescribing physicians and/or users of the drug.

40. In addition, and in the alternative, the Motrin manufactured by Defendants is unreasonably dangerous in design, in that at the time the drug left the Defendants' control, there

Case 2:11-cv-00457-AJM-KWR   Document 1   Filed 02/24/11   Page 8 of 10

existed, upon information and belief, an alternative design for the drug that was capable of preventing Plaintiff's injuries, and the likelihood of causing the Plaintiff's injuries and the gravity of that harm outweighed the burden (if any) on Defendants in adopting such alternative design and the adverse effect (if any) on the utility of the drug.

41.     The Defendants knew or in light of reasonably available scientific knowledge should have known about the danger that caused the injuries for which Plaintiff seeks recovery.

42.     A reasonably ordinary consumer who ingested Motrin would not readily recognize ingestion of the drug involved substantial dangers.

43.     The Plaintiff did not know, nor had reason to know, at the time of her usage of Motrin, or at any time prior to its use, of the existence of the above-described defects and inadequate warnings.

44.     Those defects caused serious injuries to Plaintiff when the product was used in its intended and foreseeable manner, and in the manner recommended by Defendants or in a non-intended manner that was reasonably foreseeable.

45.     Defendants failed to provide adequate warnings based on what it knew or should have known about the adverse effects of Motrin.

46.     Defendants are therefore liable to Plaintiff for any and all damages arising from Stevens Johnson Syndrome and/or Toxic Epidermal Necrolysis, and/or other purchase and/or use of the drug.

## **DAMAGES**

47.     It is believed and alleged that Plaintiff's ingestion and use of Motrin, caused and/or contributed to her Stevens Johnson Syndrome and/or Toxic Epidermal Necrolysis.

48. As a direct and proximate result of the purchase and use of Defendants' Motrin, and the Stevens Johnson Syndrome and/or Toxic Epidermal Necrolysis resulting therefore, Plaintiff has incurred, and will continue to incur, medical expenses.

49. As a direct and proximate result of the purchase and use of Defendants' Motrin, and the Stevens Johnson Syndrome and/or Toxic Epidermal Necrolysis resulting there from, Plaintiff has suffered, and will continue to suffer, physical pain, mental anguish, emotional distress, disfigurement, disability and loss of enjoyment of life.

50. As a producing and proximate result of the above-described acts and omissions of Defendants, Plaintiff has incurred actual damages in excess of $75,000.00, including but not limited to:

    a. Reasonably and necessary medical expenses incurred in the past;

    b. Reasonable and necessary medical expenses reasonably likely to be incurred in the future;

    c. Conscious physical pain and suffering experienced in the past;

    d. Conscious physical pain and suffering reasonably likely to be experienced in the future;

    e. Mental anguish in the past;

    f. Mental anguish likely to be experienced in the future;

    g. Physical disfigurement in the past;

    h. Physical disfigurement likely to be experienced in the future;

    i. Physical impairment in the past;

    j. Physical impairment likely to be experienced in the future;

    k. Pre and post-judgment interest at the lawful rate;

    l. Such other applicable damages as the Court deems appropriate.

WHEREFORE, Plaintiff prays that after this Complaint is served on Defendants it be deemed good and sufficient, and upon final determination of these causes of action Plaintiff receives a judgment against Defendants as follows:

    a. Actual damages as alleged against Defendants;

    b. Costs of court necessary for filing and preparation of this case for trial;

    c. Prejudgment interest and legal interest on the judgment;

    d. All such other and further relief at law and in equity to which Plaintiff may show herself to be justly entitled.

Plaintiff hereby demands a trial by jury.

              By s/Robert L. Salim
              Robert L. Salim, LA Bar No. 11663
              **Law Office of Robert L. Salim**
              1901 Texas Street
              Natchitoches, LA 71457
              Telephone: (318) 352-5999
              Fax: (318) 354-1227

              Terrence J. Lestelle, LA Bar No. 08540
              **Lestelle & Lestelle, APLC**
              3421 N. Causeway Blvd., Suite. 602
              Metairie, LA 70002
              Telephone: (504) 828-1224
              Facsimile: (504) 828-1229

              ATTORNEYS FOR PLAINTIFF