## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KEISHA HUNT**                                          **CIVIL ACTION**

**VERSUS**                                                **NO: 11-0457**

**MCNEIL CONSUMER HEALTHCARE, ET AL.**      **SECTION: "H" (4)**

## ORDER

Before the Court is a **Motion by Roger Salisbury, M.D. for a Protective Order Pursuant to Federal Rule of Civil Procedure 26(c) (R. Doc. 102)**, filed by non-party witness, Roger Salisbury, M.D. ("Salisbury"), seeking an order from this Court limiting the discovery of documents requested by Defendants McNeil Consumer Healthcare and Johnson & Johnson (collectively "Defendants") in their Notice of Deposition.  Defendants oppose the motion.  (R. Doc. 107.)  The motion was heard with oral argument on June 20, 2012.

**I.    Background**

This product liability lawsuit was filed by Hunt after her minor child, M.H., developed Stevens-Johnson Syndrome ("SJS") and/or Toxic Epidermal Necrolysis Syndrome("TENS") after ingesting the drug Motrin.[1]  Hunt's complaint alleges that shortly after taking Motrin, M.H. developed a severe rash, was taken to the emergency room, admitted into the hospital, and later

---

[1]SJS and TENS - another form of SJS - are severe adverse reactions to medication.  According to the SkinAssociation, common symptoms of SJS and TENS include a painful red or purplish rash, blisters, and inflamed mucous membranes.  *What is Stevens-Johnson Syndrome?*, available at http://www.skinassn.org/what-is-stevens-johnson-syndrome.html.  SJS also causes one's skin to die and peel off.  Id.  According to the Stevens Johnson Syndrome Foundation, SJS is one of the most debilitating adverse drug reactions recognized.  *The Facts about Stevens-Johnson Syndrome (SJS)*, available at http://www.sjsupport.org/fact.shtml.

diagnosed with SJS and/or TENS.  (R. Doc. 1, ¶¶ 16-17.)  Hunt was later informed that M.H.'s SJS and/or TENS could have been caused by Motrin.  (R. Doc. 1, ¶ 19.)  Hunt alleges that M.H.'s SJS and/or TENS caused M.H. to suffer severe and permanent injuries.  (R. Doc. 1, ¶ 22.)

Hunt's complaint alleges that Defendants defectively designed Motrin, and failed to warn consumers of the dangers of the drug, resulting in permanent injuries to M.H.  (R. Doc. 1, ¶¶ 22, 35.) She seeks $75,000.00 in damages for past and future medical expenses, pain and suffering, mental anguish, physical disfigurement and impairment, costs, and interest.  (R. Doc. 1, ¶ 50.)

Salisbury is a plastic surgeon and former Director of the Burn Unit at the Westchester County Medical Center in Valhalla, New York.  He has been retained by Hunt to provide expert testimony regarding the anatomy and physiology of mucoutaneous drug reactions like SJS.  On April 19, 2012, Defendants issued a Notice of Deposition to Salisbury, setting his deposition for June 21, 2012.  (R. Doc. 102-3, pp. 2-9.)  Attached to Salisbury's the Notice of Deposition are thirty-one (31) separate requests for documents.  (R. Doc. 102-3, pp. 6-9.)  As discussed below, Defendants' required *subpoena duces tectum* was not provided to the Court.  However, given the fact that the motion was submitted by Salisbury, and the fact that neither counsel raised this procedural issue during the hearing on the matter, the Court will proceed with its analysis.

As to the instant motion, Salisbury seeks an order from this Court limiting the discovery of documents requested by Defendants in their Notice of Deposition.  Specifically, he seeks a protective order as to Request 4, 11, 12, 13, 14, 15, 16, 26, 27, 30, and 31.[2]  Salisbury argues that the requests

---

[2]During the hearing on the matter, counsel for Defendants informed the Court that Defendants had withdrawn Request Numbers 17, 18, 20, 23, 28, and 29.  Counsel further contended that Salisbury did not object to Request Number 19.  Thus, it is not at issue.  Indeed, while Hunt included Request Number 19 in her motion, she failed to make any argument related to that request.  Further, during the hearing on the matter, counsel for Salisbury did not contest counsel for Defendants' assertion that Request Number 19 is not at issue. Accordingly, the Court will not consider Requests 17, 18, 19, 20, 23, 28, and 29.

are irrelevant, overly broad, unduly burdensome, outside the scope of Federal Rule of Civil Procedure ("Rule") 26(a)(2)(B)[3], and are merely an attempt to annoy, oppress, and harass him.

Defendants oppose the motion, and argue that Rule 26 does not preclude them from requesting documents beyond those Salisbury produce is required to identify and produce in connection with his expert report. Defendants further argue that discovery should not be limited to documents specific to Salisbury's opinions in this case because Salisbury developed these opinions over years of testifying for other plaintiffs' lawyers in other SJS and/or TENS and/or Ibuprofen cases.

## II.   __Standard of Review__

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer*

---

[3]Rule 26(a)(2)(B) states,

*Witnesses Who Must Provide a Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
(i) a complete statement of all opinions the witness will express and the basis and reasons for them;
(ii) the facts or data considered by the witness in forming them;
(iii) any exhibits that will be used to summarize or support them;
(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed.R.Civ.P. 26(a)(2)(B).

*Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947))  Further, it is well established that "control of discovery is committed to the sound discretion of the trial court . . ."  *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(c), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2)(C).  In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues.  Fed.R.Civ.P. 26(b)(2)(C)(iii).

The decision to enter a protective order is within the Court's discretion.  *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 482 (10th Cir. 1995).  Federal Rule of Civil Procedure 26(c) governs the issuance of protective orders.  It provides in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending-or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . .

Fed.R.Civ.P. 26(c)(1).  Rule 26(c), however, contains a requirement that good cause be shown to support the issuance of a protective order, providing that "the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."  *In re Terra Int'l*, 134 F.3d 302, 306 (5th

4

Cir.1998); *see also Baggs v. Highland Towing, L.L.C.*,No., No. 99-1318, 1999 U.S. Dist. LEXIS 11450, at *6-7, 1999 WL 539459, at *2 (E.D. La. July 22, 1999) (Rule 26(c)(2) orders may be issued only when the moving party makes "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.").

## III.   <u>Analysis</u>

At issue is a Notice of Deposition, issued pursuant to Rule 30(b).  Rule 30(b)(2) permits the noticing party to request the production of documents pursuant to a *subpoena duces tectum*.  The motion submitted by Salisbury did not include a *subpoena duces tectum*.  However, given the fact that the motion was submitted by him, and the fact that neither counsel raised this procedural issue during the hearing on the matter, the Court will proceed with its analysis of Exhibit A, Salisbury's objections, and his request for a protective order.

Salisbury argues that Defendants request should be limited by Rule 26(a)(2)(B), which governs the extent of documentary disclosures a testifying expert witness must make.  Salisbury does not object to the document requests to the extent they request documents which he considered or relied upon in formulating his expert opinions in this case.  He does object, however, to Requests 4, 11, 12, 13, 14, 15, 16, 26, 27, 30, and 31 on the basis that the requests are (1) irrelevant to his opinions in this case; (2) over broad; (3) unduly burdensome; (3) seek discovery of documents outside the scope of expert discovery; and (4); merely an attempt to discover documents and information from him that are not otherwise relevant or discoverable.

In opposition, Defendants argue that the documents Salisbury refuses to produce are central to his opinions in this matter.  Defendants contend that Salisbury should be required to produce documents related to his communications with other experts in this matter, communications with the Stevens-Johnson Consulting Group and its principal Mark Mills ("Mills"), communications with the

5

FDA, as well as his compensation information in other cases as they may show bias, financial motive, or some other motive that Defendants might choose to cross-examine Salisbury on.

A.     **Request Number 4**

Request Number 4 requests,

> All documents and/or tangible things, including without limit correspondence, communications, or writings (paper or electronic), including drafts, exchanged between (1) the deponent, their employees, partners, associates, colleagues, agents, consultants and representatives, and (2) Randall Tackett, Ph.D.; Stephanie Frederic, M.D.; Cheryl Blume, Ph.D.; R. William Soller, Ph.D.; David Madigan, Ph.D.; and/or Mark Mills, or any of their employees, partners, associates, colleagues, agents, consultants and representatives.

(R. Doc. 102-3, p. 7.)

During the hearing on the matter, counsel for Salisbury argued that the request is overly broad, and irrelevant to the instant matter.  Counsel further contended that Salisbury already intends to produce any and all documents from the other expert witnesses in the matter that he reviewed in forming his expert opinion during his deposition on June 21, 2012.  Counsel further argued that Salisbury should not be required to produce communications between he and the Stevens-Johnson Consulting Group and/or its principal Mills because (1) Mills is not involved in the instant lawsuit; (2) Salisbury does not have a contractual relationship with Mills; and (3) there is no fee sharing agreement between Salisbury and Mills.

In response, counsel for Defendants contended that while nothing in the record indicates that Mills is involved in the instant matter, Mills has played an integral role in aiding Salisbury with the formulation of his expert opinion over time on SJS and/or TENS and/or erythema miltiforme and/or Ibuprofen related conditions.  Counsel further argued that Salisbury's communications with the other experts in this case and Mills may indicate a bias on his part.  Thus, he should required to produce copies of his communications.

After reviewing the request and considering the parties arguments, the Court sustained in part and overruled in part Salisbury's objections, and ordered Salisbury to respond the request. The Court, however, limited the request to Salisbury's communications with Randall Tackett, Ph.D., Stephanie Frederic, M.D., Cheryl Blume, Ph.D., R. William Soller, Ph.D., and David Madigan, Ph.D. related to SJS and/or TENS and/or erythema miltiforme for the years 2007 through 2012 only.

### B.      Request Number 11

Request Number 11 requests,

> All documents and/or tangible things which show the total amount of money paid to the deponent, their agents, employer and/or any companies or entities in which the deponent holds a financial interest, in connection with any litigation involving claims of medication induced SJS and/or TEN, including but not limited to all correspondence, invoices, billing records, records of payment received, and/or retention agreements with the law firm(s) and/or attorney(s) representing a party in the litigation.

(R. Doc. 102-3, pp. 7-8.)

During the hearing on the matter, counsel for Salisbury argued that Salisbury already produced to Defendants a letter stating the total amount of money he was paid in all SJS cases as approximately $500,000.00 in accordance with a New Jersey state court order. Counsel further argued that Salisbury's compensation in other cases is irrelevant to his expert opinions in this matter and that Salisbury should not be required to respond to this overly broad and unduly burdensome request.

In response, counsel for Defendants argued that Salisbury's compensation information is relevant, as it may give light to a lack of impartiality and/or bias. Counsel further argued that the letter provided to Defendants was a letter from Salisbury's attorneys that did not include any documents to back-up the total amount of money stated. Counsel further argued that  the total amount of money stated in the letter contradicts Salisbury's previous testimony regarding his total compensation in other SJS cases as approximately $700,000.00. Thus, Defendants are entitled to Salisbury's 1099 's and/or

7

invoices.

After considering the parties arguments, the Court overruled Salisbury's objections to the request and ordered Salisbury to produce his 1099's and/or invoices for each of the SJS and/or TENS and/or Ibuprofen related cases in which he has been compensated.  Based on counsel for Salisbury's representation that Salisbury was first retained as an expert in a SJS and/or TENS and/or Ibuprofen related cases in 2004, the Court further limited the request to the years 2004 through 2012, and further ordered that Salisbury may redact irrelevant information from the documents.

###    C.    Request Numbers 12, 13

Request Number 12 requests, "[a]ll correspondence and/or communications, including drafts, by and between the deponent and the FDA relating to any product containing Ibuprofen."  (R. Doc. 102-3, p. 8.)  Request Number 13 requests, "[a]ll correspondence and/or communication, including drafts, by and between the deponent and the FDA relating to erythema miltiforme (minor and major), Stevens-Johnson syndrom, toxic epidermal necrolysis, and/or photosensitivity."  (R. Doc. 102-3, p. 8.)

During the hearing on the matter, counsel for Salisbury contended that all of the documents requested have already been produced to Defendants in other cases.  While counsel for Defendants questioned whether the documents produced were all of the documents in Salisbury's possession, he conceded that Salisbury had produced documents in response to this request in previous cases.

Accordingly the Court found this request to be preliminary satisfied, and counsel for both parties agreed.

###    D.    Request Numbers 4,15, and 16

Request Number 14 requests, "[a] list of cases, identifying the issues and parties, in which the deponent has been deposed or currently has depositions scheduled."  (R. Doc. 102-3, p. 8.).  Request

Number 15 requests, "[a] list of cases, identifying the issues and parties, in which the deponent has testified at trial, or is scheduled to testify at trial." (R. Doc. 102-3, p. 8.) Request Number 16 requests, "[a] list of cases, identifying the issues and parties, in which the deponent has rendered an expert opinion." (R. Doc. 102-3, p. 8.)

During the hearing on the matter, counsel for Defendants conceded, upon questioning by the Court, that he already has a list of cases that Salisbury has been deposed or currently has depositions scheduled, has testified at trial, or is scheduled to testify at trial, and has rendered an expert opinion. Accordingly, the Court sustained Salisbury's objections to these requests.

### E. Requests 26, 27, 30 and 31

Requests 26, 27, 30, and 31 request "all" communications with Mark Mills and the Stevens-Johnson Syndrome Consulting Group and "all" documents related to "any" communication with Mark Mills and the Stevens-Johnson Syndrome Consulting Group. (R. Doc. 102-3, p. 9.)

During the hearing on the matter, counsel for Salisbury argued that the requests are overly broad. Counsel further argued that Salisbury should not be required to produce communications or documents related to communication between he and the Stevens-Johnson Consulting Group and/or Mills because (1) Mills is not involved in the instant lawsuit; (2) Salisbury does not have a contractual relationship with Mills; and (3) there is no fee sharing agreement between Salisbury and Mills. Plaintiff:

In response, counsel for Defendant argued that the request is relevant and not overly broad because Mills has played an integral role in aiding Salisbury to form his expert opinion on SJS and/or TENS and/or Ibuprofen related conditions since 2004. Counsel further contended that Defendants are seeking documentary proof that our Mills "created" Salisbury as an expert by "feeding" him literature, etc.

When asked whether Defendants have asked Salisbury in the past about Mills' role in helping Salisbury to formulate his expert opinion in SJS and/or TENS and/or Ibuprofen related, counsel for Defendants responded that he did not know.  Counsel was also unable to inform the Court whether other courts have permitted Defendants' request(s) for these documents.

The Court noted, however, that - despite the fact Mills is not involved in the instant lawsuit - nothing prevented Salisbury from communicating with Mills or requesting information from Mills regarding the instant matter.

Accordingly, the Court overruled Salisbury's objection, and ordered the production subject to the limitation that includes electronic communications between Salisbury and Mills and/or the Stevens-Johnson Syndrome Consulting Group on the subject matter from the years 2008 through 2012.  The Court further ordered that Salisbury is not required to produce any documents that have already been produced to Defendants in previous cases.

## IV.   Conclusion

Accordingly,

**IT IS ORDERED** that the **Motion by Roger Salisbury, M.D. for a Protective Order Pursuant to Federal Rule of Civil Procedure 26(c) (R. Doc. 102)** is **GRANTED IN PART** and **DENIED IN PART**.

- Salisbury's objections to Request Number 4 are sustained in part and overruled in part. The request shall be limited to Salisbury's communications with Randall Tackett, Ph.D., Stephanie Frederic, M.D., Cheryl Blume, Ph.D., R. William Soller, Ph.D., and David Madigan, Ph.D. related to SJS and/or TENS and/or erythema miltiforme for the years 2007 through 2012 only.

- Salisbury's objections to Request Number 11 are overruled.  Salisbury shall produce

10

his 1099 's and/or invoices for each of the SJS and/or TENS and/or Ibuprofen related

cases in which he has been compensated for the years 2004 through 2012.  Salisbury

may redact irrelevant information from the documents.

•      Salisbury's objections to Request Numbers 12 and 13 are sustained.

•      Salisbury's objections to Request Numbers 14, 15, and 16 are sustained.

•      Salisbury's objections to Request Numbers 26, 27, 30, and 31 are overruled.  Salisbury

shall produce the requested documents subject to the limitation that includes electronic

communications between Salisbury and Mills and/or the Stevens-Johnson Syndrome

Consulting Group on the subject matter from the years 2008 through 2012.

New Orleans, Louisiana, this 20th day of June 2012.


**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**