UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KEISHA HUNT, INDIVIDUALLY AND ON BEHALF OF HER MINOR CHILD, M. H. | CIVIL ACTION |
| VERSUS | NO: 11-0457 |
| MCNEIL CONSUMER HEALTHCARE, ET AL. | SECTION: "H" (4) |

## ORDER

Before the Court is Plaintiff, Keshia Hunt's, ("Hunt") **Plaintiffs' Motion to Compel an Continuation Deposition of Dr. Jean Claude Roujeau to Remedy Defendants' Discovery Abuses (R. Doc. 185)**, seeking leave of the Court to compel Defendants, McNeil Consumer Healthcare Division of McNEIL-PPC, Inc., ("McNeil") and Johnson & Johnson, ("J&J") (collectively, "Defendants") to produce their expert, Dr. Jean Claude Roujeau, ("Dr. Roujeau") for deposition for what it characterizes as Defendants' "discovery abuses." The motion is opposed (R. Doc. 201). The motion was noticed for submission on December 5, 2012, continued until December 12, 2012, and was heard by oral argument on that date.

## I.  Background

This product liability lawsuit was filed by Hunt after her minor child, M.H.,[1] developed Stevens-Johnson Syndrome ("SJS") and/or Toxic Epidermal Necrolysis Syndrome ("TENS") after ingesting the drug Motrin. Hunt's complaint alleges that shortly after taking Motrin, M.H.

---

[1] All occurrences of M.H.'s first and last name have been modified where appropriate. These modifications have not been noted by the Court.

developed a severe rash, was taken to the emergency room, admitted into the hospital, and diagnosed with SJS and/or TENS.  (R. Doc. 1, ¶¶ 16-17).  Hunt was informed that M.H.'s SJS and/or TENS could have been caused by Motrin on the day M.H. was discharged from the hospital.  (R. Doc. 1, ¶ 19).

Hunt alleges that Defendants defectively designed Motrin, and failed to warn consumers of the dangers of the drug, which resulted in permanent injuries to M.H.  (R. Doc. 1, ¶¶ 22, 35).  Hunt seeks damages for past and future medical expenses, pain and suffering, mental anguish, physical disfigurement and impairment, costs, and interest.  (R. Doc. 1, ¶ 50).

Hunt first sought to take the deposition of Dr. Roujeau by a motion to compel heard by the Court on September 5, 2012.  (R. Doc. 139).  The Court ordered Dr. Roujeau to be deposed on one of the dates between October 13-16, 2012.  (R. Doc. 171, p. 6).  Dr. Roujeau was deposed on October 13, 2012, however, Hunt argues that he did not testify about his "opinions and the bases for those opinions in a pending and unrelated case, *Zungia*."  (R. Doc. 185, p. 1).  Hunt now seeks to compel Defendants to produce Dr. Roujeau for deposition to cure Roujueau's failure to answer questions regarding *Zungia*, as well as for actions regarding production of electronically stored information which it characterizes as a "discovery abuse."  The motion is opposed.

**II.     Standard of Review**

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." *Id* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials.  *Herbert v. Lando*, 441 U.S. 153, 176 (1979).  Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc.*

*v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994). Rule 30 provides that a party must obtain leave of the Court to take the deposition of any person who has previously been deposed. *See* Rule 30(a)(2).

Spoliation is an intentional act which makes evidence unavailable. *See United States v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000); *St. Tammany Parish Hospital Service District No. 1 v. Travelers Property Casualty Co. of America*, 250 F.R.D. 275, 277 (E.D. La. 2008). It encompasses both active destruction and intentional non-production of evidence. *See Caparotta v. Entergy Corp.*, 168 F.3d 754, 760 (5th Cir. 1999). To find that spoliation has occurred, a court analyzes a party's (1) duty to preserve the evidence, (2) degree of culpability, and (3) the relevance of the evidence. *See Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598 (S.D. Tex. 2010); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003).

Courts have found that when a party anticipates filing a lawsuit, the court can construe a duty to preserve evidence. *See Rimkus*, 688 F. Supp. 2d at 640-44. While "culpability" required more than failure to act on a duty, it could be shown through inconsistent testimony. *Id.* at 642-44 (noting that for purposes of summary judgment, culpability could be found where defendant stated that emails were deleted for storage reasons, although company IT professional indicated that storage space only became an issue after emails had been deleted).

Trial courts evaluating ESI spoliation in the discovery stage have noted their broad discretion to impose sanctions, which should be evaluated on a case-by-case basis. *Consolidated Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 339 (M.D. La. 2006). Here, although the Court may, *inter alia*,

exclude the spoiled evidence, or allow the jury to draw an adverse inference that the spoiled evidence would have been unfavorable to that party, such sanctions are considered "drastic." *Id.* at 339-40.  Before imposing such "drastic" sanctions, the Court should evaluate (1) the party's degree of fault, (2) the opponent's degree of prejudice, and (3) whether a lesser sanction will avoid substantial unfairness. *Menges v. Cliffs Drilling Co.*, 2000 WL 765082, at *2 (E.D. La. June 12, 2000) (citation omitted).

### III. Analysis

As to the instant motion, Hunt seeks production of certain electronic records, either from Defendants' electronic media or from Dr. Roujeau's computer, as well as the opportunity to depose Dr. Roujeau regarding those materials.  Alternatively, Hunt requests that the Court enter an Order striking Dr. Roujeau from testifying in the case.

#### A. Dr. Roujeau's Deposition Testimony

##### 1. Dr. Roujeau's Testimony in Prior Cases

In support of its prior Motion, Hunt argued that Defendants designated Dr. Roujeau, one of the world's leading experts on SJS, as a testifying expert on or about June 1, 2012.  (R. Doc. 139-1, p. 1).  In support of the instant motion, Hunt argues that although Dr. Roujeau testified on October 13, 2012, he failed to give testimony on certain other pending cases.  (R. Doc. 185, p. 1).

Specifically, Hunt argues that some of the questions posed to Dr. Roujeau during the deposition addressed his "progressive shift" regarding opinions given in prior SJS/TEN cases.  (R. Doc. 185-1, p. 1).  Hunt contends that Dr. Roujeau previously published articles which liked Motrin, NSAIDs, and other drugs to the onset of TEN. *Id.* at 2.  However, when Dr. Roujeau has been called to testify as Defendants' expert witness in other personal injury cases involving alleged

SJS/TEN outbreaks, he has stated that Motrin did not cause the SJS/TEN in question. *Id.*[2] Specifically, Hunt argues that Dr. Roujeau's testimony in one such case, *Zuniga*, is relevant to the instant motion because it shows Dr. Roujeau's potential bias, especially as Dr. Roujeau's opinions are essentially the same in this case as they were in prior cases. *Id.* at 3-4. However, counsel for Defendants instructed Dr. Roujeau not to answer questions about that opinion.

In opposition, Defendants argue the Dr. Roujeau answered all of Hunt's questions to the best of his knowledge. (R. Doc. 201, p. 7). With respect to his prior analysis of *Zuniga*, Dr. Roujeau answered that he did not "remember the circumstances that exactly went on." *Id.* at 8 (citing R. Doc. 185-2, p. 5). Dr. Roujeau later testified that he was not qualified to determine whether an individual's treating physician had provided proper treatment. *Id.* (citing R. Doc. 201-7, pp. 43-44). Defendants argue that the motive for the instant motion is merely to obtain evidence for *Zuniga*, because in that case Dr. Roujeau is also an expert witness, but discovery is closed and expert depositions are not allowable by law. (R. Doc. 201, p. 2).

At oral argument, the parties disputed whether Defendants instructed him not to answer. Defendants argued that their counsel had stated on the record that he would "ask [Dr. Roujeau] not to answer that question." However, at no time to Defendants' counsel explicitly *instruct* Dr. Roujeau not to answer a question. The Court noted that regardless whether counsel's statement was properly viewed as an "instruction" or not, Hunt's question pertained to a separate lawsuit for which discovery had closed, and Hunt could not attempt to obtain discovery in another case based on her

---

[2]Hunt states that these cases are *Madden, et al. v. Wyeth, et al.*, No. 03-167BD (N.D. Tex) (hereinafter, "*Williams*"); *Simon Saw v. McNeil*, No. ESX-L-1666-05 (N.J. Super. Ct.) (hereinafter, "*Saw*"); *Celsa Esquivel, et al v. Johnson & Johnson, et al.*, NO. 1322 (Pa. Ct. Common Pleas) (hereinafter, "*Zuniga*").

deposition of this witness.[3] The Court cautioned Keith Jensen, the attorney for Hunt who had asked this question, against employing such a discovery tactic in the future.

### B. Interception of Documents

In support of its motion, Hunt argues that although Dr. Roujeau appeared at the October 13, 2012 deposition with certain documents responsive to Hunt's subpoena duces tecum, these documents were "intercepted" by Defendants and have not yet been produced. (R. Doc. 185, pp. 1-2). Hunt argues that Defendants have now claimed that "all but one" of the electronic files are now corrupt, "exacerbating Defendants' discovery abuses to a spoliation of evidence." *Id.* at 2.

Specifically, Hunt argues that Dr. Roujeau came to the October 13, 2012 deposition with materials "responsive" to Hunt's discovery requests, but during the deposition Dr. Roujeau admitted he had never actually seen these requests. (R. Doc. 185-1, p. 10). Dr. Roujeau stated at deposition that he thought the relevant information had been transferred from a digital memory stick to a CD/DVD, from which they would be produced to Hunt. *Id.* at 10-11. Dr. Roujeau stated that all of the material on the memory stick pertained to his expert reports in this case, and therefore all of it was relevant. *Id.* at 11-12. Dr. Roujeau stated that the memory stick contained "three or four" PowerPoint slides relating to SJS-TEN. *Id.* at 12.

---

[3] Hunt also argues that Dr. Roujeau has admitted that his professional opinion "on the role of mycoplasma pneumonia as a causative agent in SJS-TEN has undergone a 'progressive shift.'" (R. Doc. 185,1, p. 8). Hunt argues that although *Zuniga* is a case nearly identical to the instant suit, Dr. Roujeau stated at his deposition that he preferred not to answer these opinions, which Hunt argues is an abuse of the discovery process. *Id.* at 9. In opposition, Defendants argue the Dr. Roujeau answered all of Hunt's questions to the best of his knowledge. (R. Doc. 201, p. 7). Defendants also state, without elaborating, that Dr. Roujeau answered questions regarding his "progressive shift." *Id.* at 9. The Court finds that regardless whether a "progressive shift" had in fact occurred, the parties could not use to deposition to obtain information for use in the *Zuniga* case.

Subsequent to the deposition, Hunt scheduled a Rule 37 conference to discuss the missing documents, which after an initial delay took place on October 29, 2012. *Id.* at 14.[4] At the conference, Defendants indicated that the "memory stick" containing Dr. Roujeau's PowerPoint slides was in Philadelphia, and that the data actually appeared on defense counsel's assistant's *personal* thumb drive; Defendants never explained how the data had arrived in Philadelphia, nor why it was commingled with personal information. *Id.* at 14-15.  Hunt argues that it has yet to receive the data from the drive, although Defendants agreed to produce it. Defendants later stated that the information had been corrupted. *Id.*

Hunt argues that sanctions for spoliation are required in this case because of Defendants (1) intentional withholding of relevant material, (2) commingling electronic files with personal data from defense counsel's assistant on a thumb drive, (3) prior representation that they would provide an inventory of the thumb drive, which was later reneged, and (4) subsequent corruption of all but one electronic file.

In opposition, Defendants argue that (1) no deposition subpoena was ever served on Dr. Roujeau to produce the documents; (2) defendants voluntarily produced all of the documents Dr. Roujeau considered in forming his opinion; (3) defendants did not engage in spoliation of evidence because all of these documents were copied onto a "memory stick" and have always existed outside of the memory stick; and (4) Dr. Roujeau answered all questions of him, to the best of his knowledge, at the deposition. (R. Doc. 201, p. 1).

Defendants also attach an email sent to Hunt on September 26, 2012, stating that defendants' counsel were not authorized to accept a subpoena on Dr. Roujeau's behalf, but "[h]e will produce

---

[4]Once made aware that the electronic files had come into the possession of defense counsel's assistant, Hunt attempted to serve partners at defense counsel's firm. *See* (R. Docs. 185-10, 185-11).

7

his file for this case." (R. Doc. 201-4, p. 2). Defendants objected to the subpoena in a formal response. (R. Doc. 201-5, p. 5). Defendants also attach an Affidavit from an attorney in this case, who indicates that all of the files contained on the "memory stick" exist outside the "memory stick."

At oral argument, the parties reiterated their arguments, and narrowed the scope of relevant material to a series of powerpoint presentations which had allegedly been copied onto the "memory stick." The Court reviewed Dr. Roujeau's deposition testimony, and found that its reference to public powerpoint presentations was vague, and indicated that Dr. Roujeau gave substantially the same presentation each time. Therefore, the Court found that notwithstanding the issue of whether certain files had or had not been "copied" onto the "memory stick," Defendants should contact their expert and produce electronic powerpoint files of Dr. Roujeau's last two presentations.[5] The Court ordered Defendants to produce these files to Hunt no later than thirty (30) days after the December 12, 2012 oral argument.

The Court also ruled that the motion to compel a continuation deposition of Dr. Roujeau was denied at present; however, the Court noted that if inspection of the power point presentations warranted a re-deposition of Dr. Roujeau on that topic, Hunt would be free to seek the same from the Court.

---

[5]The Court reviewed pages 294-95 of Dr. Roujeau's deposition, as contained in Hunt's motion. (R. Doc. 185-2, p. 10). Neither the Court nor the parties specified what the last "two presentations" were as of the December 12, 2012 oral argument, but Defendants' failure to ask any clarifying questions indicates that the implication was clear.

### IV.     Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiff, Keshia Hunt's ("Hunt") **Plaintiffs' Motion to Compel an Continuation Deposition of Dr. Jean Claude Roujeau to Remedy Defendants' Discovery Abuses (R. Doc. 185)** is **GRANTED IN PART** and **DENIED IN PART**.

It is **GRANTED** as to production of Dr. Jean Claude Roujeau's ("Dr. Roujeau") electronic information. Defendants, McNeil Consumer Healthcare Division of McNEIL-PPC, Inc. ("McNeil") and Johnson & Johnson, ("J&J") (collectively, "Defendants") shall provide Dr. Roujeau's last two powerpoint presentations to Hunt no later than thirty (30) days after the December 12, 2012 oral argument, as specified therein.

It is **DENIED** as to re-deposition of Dr. Roujeau in all respects as specified at the December 12, 2012 oral argument. Hunt remains free, however, to request an adequately tailored re-deposition of Dr. Roujeau after it has an opportunity to inspect Dr. Roujeau's last two powerpoint presentations.

New Orleans, Louisiana, this 22nd day of February 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**