UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KEISHA HUNT, INDIVIDUALLY AND ON BEHALF OF HER MINOR CHILD, M. H.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 11-0457** |
| **MCNEIL CONSUMER HEALTHCARE, ET AL.** | **SECTION: "H" (4)** |

## ORDER

Before the Court is Plaintiff, Keshia Hunt's, ("Hunt") **Motion to Compel Corporate Representative and Fact Witnesses for Depositions (R. Doc. 193)**, seeking leave of the Court to compel Defendants, McNeil Consumer Healthcare Division of McNEIL-PPC, Inc., ("McNeil") and Johnson & Johnson, ("J&J") (collectively, "Defendants") to produce a corporate representative and fact witness for depositions. The motion is opposed (R. Doc. 209). The motion was noticed for submission on December 5, 2012, continued until December 12, 2012, and was heard by oral argument on that date.

### I. Background

This product liability lawsuit was filed by Hunt after her minor child, M.H.,[1] developed Stevens-Johnson Syndrome ("SJS") and/or Toxic Epidermal Necrolysis Syndrome ("TENS") after ingesting the drug Motrin. Hunt's complaint alleges that shortly after taking Motrin, M.H. developed a severe rash, was taken to the emergency room, admitted into the hospital, and diagnosed with SJS

---

[1] All occurrences of M.H.'s first and last name have been modified where appropriate. These modifications have not been noted by the Court.

and/or TENS. (R. Doc. 1, ¶¶ 16-17). Hunt was informed that M.H.'s SJS and/or TENS could have been caused by Motrin on the day M.H. was discharged from the hospital. (R. Doc. 1, ¶ 19).

Hunt alleges that Defendants defectively designed Motrin, and failed to warn consumers of the dangers of the drug, resulting in permanent injuries to M.H. (R. Doc. 1, ¶¶ 22, 35). Hunt seeks damages for past and future medical expenses, pain and suffering, mental anguish, physical disfigurement and impairment, costs, and interest. (R. Doc. 1, ¶ 50).

As to the instant motion, Hunt seeks to compel the deposition of Defendants' corporate representative and fact witnesses. The motion is opposed.

## II.     Standard of Review

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Rule 30 provides that a party must request leave of the court to take any deposition when "the deposition would result in more than 10 depositions being taken under this rule." Rule 30(a)(2). Rule 30 provides that a party may request the deposition of a corporate representative. *Id.* at 30(b)(6). "The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf." *Id.*

**III.    Analysis**

As to the instant motion, Hunt seeks to depose Defendants' 30(b)(6) expert and fact witnesses.[2] Hunt argues that Defendants agreed to produce Dr. Edwain Kuffner ("Dr. Kuffner") as their corporate designee. (R. Doc. 193-1, p. 4). However, Defendant was to produce a list of other persons, and to date has failed to do so. *Id.* at 4-5, 8. Specifically, Hunt seeks to depose the following 12 individuals: Lois Clymer, ("Clymer") Tiffany Crump, ("Crump") Shelley DeLaurentis, ("DeLaurentis") Minnie Baylor-Henry, ("Baylor-Henry") Galen Engh, (Engh") Kathy Fallon, ("Fallon") Lynn Pawelski, ("Pawelski") Jeffrey Baggish, ("Baggish") Anthony Temple, ("Temple") Dr. Kuffner, Ngoc Lam, ("Lam") and Defendants' 30(b)(6) representative. *Id.* at 8. Hunt later limited the number of deponents to five: Clymer, Crump, DeLaurentis, Pawelski, Defendants' 30(b)(6) representative, as well as an "unidentified witness." *Id.* at 9.

Hunt does not argue that the total number of individuals would exceed the 10-deponent limit, as four depositions have already been taken in this case. (R. Doc. 193-1, p. 1). According to the filings attached by Hunt to the motion, there is apparently no agreement to take more than ten depositions on each side. *See* (R. Docs. 193-7-13).

In opposition, Defendants argued that Hunt's motion is "contrary to the discussions and agreements that occurred after the motion was filed." (R. Doc. 209, p. 1). Moreover, Defendants argue that although Hunt assumes that all of her proposed witnesses are under the control of Defendants, each witness poses unique challenges that were not addressed in the instant motion.

At oral argument, Hunt argued that an extensive effort, which involved 72 separate emails and half a dozen phone conversations, had been expended in an attempt to schedule the Defendants'

---

[2]Hunt's filing contains some discussion of the discovery troubles in this case to date, which the Court finds inapposite to determining the case itself.

corporate deposition. Hunt argued that although the parties agreed that she was entitled to take the deposition, the parties could not agree on a scheduled date, and had therefore come to Court for an Order on the same. In opposition, Defendants stated that they needed guidance from the Court regarding which witnesses would be produced.

The parties requested guidance only on the following individuals: Clymer, Crump, DeLaurentis, Dr. Kuffner, Baggish, Baylor-Henry, and any other person who might be designated as a 30(b)(6) witness for the Defendants. Accordingly, the Court made a series of oral rulings which established the following witness deposition dates for these individuals, and no others.

### A. Scope of 30(b)(6) Deposition

As to Defendants' 30(b)(6) witness, Dr. Kuffner, Defendants argue that Hunt has refused to go ahead with a deposition scheduled to occur if that deposition is limited to the three original areas specified by Hunt in her notice of deposition. (R. Doc. 209, pp. 3-4). However, Hunt has subsequently requested that Dr. Kuffner testify on eight additional subject areas. *Id.* at 4. Defendants stated that they would have to designate a new 30(b)(6) witness to cover the additional topics, which they argue Hunt found unacceptable. *Id.* at 5.

The Court ordered that Defendants' 30(b)(6) witness or witnesses for the 11 topics listed in Hunt's notice was to take place on the week of January 21, 2013.[3] In the event that week was logistically unfeasible for Defendants, the corporate deposition was to take place during the week of January 14, 2013. The Court also indicated that if Defendants chose to make Dr. Kuffner available for his individual deposition on the same day as the 30(b)(6) deposition, Hunt was obligated to depose him on that date or else pay his reasonable travel expenses incurred in producing

---

[3] The 30(b)(6) deposition was to include Kuffner, or any other representative or list of representatives who Defendants chose to produce in connection with the 11 subject areas specified in Hunt's deposition notice.

4

him on another date.

### B.     Clymer, Crump, DeLaurentis, and the Prejudice of Delay

As to Clymer and Crump, Defendants argue that they are former employees, over whom Defendants have no control. (R. Doc. 209, p. 2). Defendants contend that they attempted to contact Clymer, who last worked for McNeil in 2008, but their contact information was no longer accurate. *Id.* As to Crump, Defendants argues that she was reluctant to appear for a deposition but would be more amenable to doing so after the holidays, in January or February. *Id.* at 2-3. As to DeLaurentis, Defendants argue that she is a current employee of McNeil whose mother recently became ill; therefore, she requested that the deposition occur in early January 2013. *Id.* at 3. Defendants argue that because trial has been postponed until September 2013, taking depositions in early 2013 will not prejudice Hunt. *Id.* at 2-3.

At oral argument, the Court found that Hunt had failed to request specific dates for DeLaurentis' deposition. Moreover, because her mother's illness had recently resulted in her death, the Court ordered DeLaurentis to submit herself for deposition during March 2013. The specific date was left to the agreement of the parties.

As to Crump and Clymer, Defendants argued that they were no longer employed by Defendants. The Court ordered Defendants to produce their last available contact information for these two individuals to Hunt no later than seven days of the December 12, 2012 oral argument.[4]

### C.     Baylor-Henry and Baggish

Defendants argue that although Hunt failed to identify her sixth witness in her motion, she has since noticed the deposition of Baylor-Henry. (R. Doc. 209, p. 6). "[I]t is uncertain if Plaintiff

---

[4]Defendants stated that they would provide the "last known addresses" for Crump and Clymer.

5

intends to proceed with that deposition in light of her motion." *Id.*

At oral argument, Hunt presented a deposition list of the Court which indicated that the deposition of Baylor-Henry would take place on December 14, 2012; therefore, Hunt did not request action from the Court at this time. Hunt also requested that the Court order Defendants to produce Baggish for deposition in his individual capacity. However, after Defendants indicated that Baggish was no longer in their employ, the Court declined to order his production. Instead, Defendants were ordered to provide Hunt with his last known address no later than seven days of the December 12, 2012 oral argument.

### D.     Other Issues at Oral Arugment

At oral argument, the parties also discussed a subpoena which Hunt had sent to the FDA. Hunt admitted that the matter had not been specifically presented to the Court for consideration, and the Court found that consideration thereto was not tenable. Defendants asserted that they were entitled to receive copies of any documents which Hunt had received from the FDA no later than seven days after the December 12, 2012 oral argument; and Hunt did not contest this assertion. The Court ordered the same.

Finally, the Court ordered that, as the parties had experienced some communication difficulties, going forward Hunt's attorney, Patty Ann Trantham, was to communicate directly with Defendants' attorney, Paul J. Cassisa, Jr., regarding scheduling of discovery in this case.[5]

## IV.    Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiff, Keshia Hunt's, ("Hunt") **Motion to Compel Corporate**

---

[5] The parties also raised an issue regarding the deposition of another witness, Dr. Mark Sanford. The Court indicated that this issue was not properly before it, and therefore declined to consider the same.

**Representative and Fact Witnesses for Depositions (R. Doc. 193)** is **GRANTED** in part, **DENIED** in part, and **DENIED AS MOOT** in part.

It is **GRANTED** as specified at the December 12, 2012 oral argument.

It is **DENIED AS MOOT** as to issues pertaining to the deposition of Mark Sanford, as this issue is properly before the presiding U.S. District Judge.

It is **DENIED** in all other respects.

New Orleans, Louisiana, this 22nd day of February 2013.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**